UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMARCO DIGGS,<br><br>*Defendant.* | Case No. 1:23-CR-238-RCL |

### MEMORANDUM OPINION AND ORDER

This criminal case involves the alleged unlawful transportation and sale of firearms, several of which were recovered in the possession of convicted felons in the District of Columbia ("D.C.") metro area. A federal grand jury in D.C. indicted the defendant, Demarco Diggs, on one count of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), and one count of illegal transport of a firearm in violation of 18 U.S.C. § 922(a)(5). Mr. Diggs was arrested at his home in Aurora, Colorado, on August 1, 2023, and was presented and arraigned the same day in the District of Colorado. A detention hearing was held on August 3, 2023, at which the government moved for pretrial detention. At the hearing, Magistrate Judge Scott T. Varholak ordered Mr. Diggs released pending trial on $10,000 unsecured bond but stayed his decision to allow the government to file an emergency appeal.

Before the Court is the Government's Motion [6] for Emergency Review and Appeal of the Release Order. Upon review of the parties' filings and the applicable law, and after considering the arguments and evidence presented at the August 7, 2023, motion hearing, the Court finds by clear and convincing evidence that no condition or set of conditions can reasonably assure the safety of the community if Mr. Diggs is released pending trial. Accordingly, the motion for review

1

and appeal is **GRANTED**, the Release Order is **REVOKED**, defendant shall be **DETAINED** pending trial, and the motion to lift the stay is **DENIED AS MOOT**.

## I.   BACKGROUND

### A.  The Alleged Offenses

Mr. Diggs is charged with engaging in an unlawful firearms business from June 2021 to March 2023. Indictment at 1–2, ECF No. 1. According to the government, Mr. Diggs purchased, transported, and sold firearms to individuals he knew were convicted felons. Gov't Mot. for Emergency Review and Appeal ("Gov't Mot.") at 2–18, ECF No. 6. The government alleges that Mr. Diggs legally purchased at least 20 firearms between December 2020 and July 2021. *Id.* at 4. From June 2021 to March 2023, Mr. Diggs allegedly used social media to sell some of these firearms to customers located in the D.C. metro area. *Id.* at 5. The government is in possession of online messages, which it believes show that Mr. Diggs knowingly sold firearms to convicted felons and other prohibited persons. *Id.* at 11. The messages allegedly establish that Mr. Diggs transported at least one firearm to D.C. for sale. *Id.* at 5. In total, four of the firearms purchased by Mr. Diggs were recovered in the D.C. metro area. *Id.* at 2–3. Three were recovered from convicted felons. *Id.* One was used in a single-victim shooting, and one was used in an unlawful discharge. *Id.* at 3.

### B.  Procedural History

A federal grand jury in D.C. indicted Mr. Diggs on one count of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), and one count of illegal transport of a firearm in violation of 18 U.S.C. § 922(a)(5). Indictment. U.S. District Court for the District of Columbia Magistrate Judge Robin M. Merriweather issued a warrant for Mr. Diggs' arrest on July 20, 2023. ECF No. 2-3 (Court only). Mr. Diggs was arrested on August 1, 2023, in Aurora, Colorado, and presented and arraigned before U.S. District Court for the District

of Colorado Magistrate Judge Scott T. Varholak the same day. D. Colo., No. 23-mj-132 (STV), ECF Nos. 2 and 3. The government moved for pretrial detention, and Magistrate Judge Varholak set a detention hearing for August 3, 2023. D. Colo., No. 23-mj-132 (STV), ECF No. 3. The hearing was held on that date. D. Colo., No. 23-mj-132 (STV), ECF No. 9.

The government offered the following evidence at the hearing, the audio recording of which this Court has reviewed, referencing evidence reproduced in the government's motion to review and appeal the release order:

- Instagram messages between Mr. Diggs and a person named "scrapejulio" from June 2021, Gov't Mot. at 5–8, which include the following excerpt:

    - [Mr. Diggs]: "Nvm, i was visiting dc and wanted to know if you wanted one of my pipes but they already gone"
    - …
    - scrapejulio: "Lmk in advance wen u coming back so I can shop with you"
    - …
    - [Mr. Diggs]: "Ima be around the view around the 4th i still got some if you want me to bring some"
    - scrapejulio: "Ite bring me something big but small enough to carry on me & would I be able to get it before the 4th"
    - [Mr. Diggs]: "Im coming down on the 1st"
    - [Mr. Diggs]: [Photo attachment depicting eight black handguns]
    - scrapejulio: "You kno I live out Anne Arundel now you a bring it out there to me"
    - scrapejulio: "And what you want so I can put it to the side for you"
    - [Mr. Diggs]: "Sheesh, yea i can bring it out there. But if you out maryland you better of going to buy one from the gun store lol. Im letting the compact ones go for a k"
    - [Mr. Diggs]: "But i can come down a bit"
    - scrapejulio: "You know I can't go in no gun store [crying laughing emoji] and what's the cheapest one u got on the market that u a sell me"
    - [Mr. Diggs]: "850 for the normal size one"
    - scrapejulio: "Put it to the side for me I need that"
    - [Mr. Diggs]: "Big bet ima hit u up when i get back in the dmv"

- Facebook messages between Mr. Diggs and a person named "nowallet" from June 2021, *id*. at 9–11, which include the following excerpt:

    - [Mr. Diggs]: "A k for the bersa and 8 for the ruger"
    - [Mr. Diggs]: "They both .380 tho"
    - nowallet: "Your prices too high bro"

3

- o [Mr. Diggs]: "I told you i can come down on them a bit but these are for people that cant get them on there own"

- Text messages between Mr. Diggs and a person named "Torres" from February 2023, *id.* at 14–17, which include the following excerpt:

    - o [Mr. Diggs]: "I going to a convention and they be selling illegal shit there so they are not fans of people taking pics but i will try"
    - o Torres: "What all do they require to buy from there¿"
    - o [Mr. Diggs]: "A valid colorado id and a clean background check. It's the same at any place"
    - o [Mr. Diggs]: "But if you have had violent crimes and or domestic crimes then you will be automatically denied"
    - o Torres: "So you're willing to get me a gun under your name¿"
    - o [Mr. Diggs]: "Yep"

These online messages are relevant evidence that Mr. Diggs intentionally sold firearms to "prohibited persons," including convicted felons, during the period charged in the indictment.

Additionally, according to the government, ATF officers interviewed Mr. Diggs at his apartment in Colorado in December 2022. *Id.* at 12. During the interview the officers allegedly told Mr. Diggs they were investigating him for firearms trafficking to D.C. *Id.* Mr. Diggs apparently denied any involvement in firearms trafficking but stated that several firearms were stolen out of his vehicle while he was in D.C. *Id.* Mr. Diggs told ATF that he reported the theft to local police. *Id.* However, ATF was unable to locate a report. *Id.* The government alleges that Mr. Diggs continued selling firearms after the ATF meeting. According to the government, the February 2023 text message exchange between Mr. Diggs and Torres shows that Mr. Diggs sold a firearm to Torres two months after the ATF visit. *Id.* at 14–16. In its motion for appeal, the government avers that Torres has been identified and is a convicted felon. *Id.* at 16.

The government also represented that several firearms sold by Mr. Diggs were found in D.C. *Id.* at 2–3. According to the government, some of the firearms were possessed by convicted felons, while at least one of the firearms was used in a single-victim shooting, and one of the firearms was used in an unlawful discharge. *Id.* The government is seeking forfeiture of twenty-

five firearms purchased or possessed by Mr. Diggs, as well as ammunition associated with those firearms. Indictment; *see also id.* at 4 (listing firearms purchased by Mr. Diggs).

The defense also offered evidence at the hearing, which is reproduced in Mr. Diggs' opposition to the government's motion to review and appeal the release order. Def.'s Opp'n to Gov't Mot. for Emergency Review and Appeal ("Def.'s Opp'n"), ECF No. 11. At the hearing, the defense argued that Mr. Diggs did not pose a danger to others and did not pose a flight risk. The defense sought to cast doubt on the sufficiency of the government's evidence, arguing that there was no evidence directly connecting the convicted felons found in possession in D.C. with Mr. Diggs, and that the evidence was insufficient to establish that Mr. Diggs knew he was selling firearms to convicted felons. *Id.* at 3–4. The defense represented that Mr. Diggs has no criminal history and served in the military for at least two years before being discharged for medical reasons. *Id.* at 5. The defense also represented that Mr. Diggs has strong community ties to both Colorado and the D.C. metro area and is gainfully employed. *Id.* at 5–6. The defense proposed that Mr. Diggs be released subject to the condition that he not possess or purchase firearms.

The Pretrial Services Report, which is not filed on the docket in the District of Colorado, apparently confirms that Mr. Diggs is an Army veteran, has no criminal record, is gainfully employed, assists with raising his three-year old child, previously worked as a security guard for various agencies, was not on probation or parole at the time of the alleged offenses, and is financially able to travel from Colorado to D.C. for court dates. *Id.* at 5.

Magistrate Judge Varholak orally denied the government's motion for detention. Regarding flight risk, Magistrate Judge Varholak found that there were conditions of release he could impose to reasonably assure Mr. Diggs' presence at future hearings. Magistrate Judge Varholak noted that Mr. Diggs did not flee his residence after the December 2022 ATF visit and

retains strong ties both to Colorado and the D.C. metro area. Regarding dangerousness, Magistrate Judge Varholak rejected as incredible the defense's contention that Mr. Diggs did not know he was selling firearms to convicted felons. But he found that there were conditions of release he could impose to reasonably assure the safety of the community while Mr. Diggs is released pending trial. Magistrate Judge Varholak cited Mr. Diggs' lack of criminal history, record of military service, and strong community ties for his finding that the conditions of release he would impose would be sufficient.

Magistrate Judge Varholak ordered Mr. Diggs released on $10,000 unsecured bond subject to several conditions including that Mr. Diggs not possess, purchase, or transfer firearms, and that Mr. Diggs avoid firearms shows and stores and businesses that sell firearms. The government informed Magistrate Judge Varholak that it intended to appeal the release order to this Court. Magistrate Judge Varholak then orally stayed his release order pending the appeal. Magistrate Judge Varholak's stay order does not include an end date for the stay. D. Colo., No. 23-mj-132 (STV), ECF No. 14. The parties are ordered to appear before Magistrate Judge Varholak on August 9, 2023, at 10:00 AM for a status conference regarding the status of the appeal.

The government filed its emergency motion for appeal and review of the release order the day after the detention hearing adjourned, on August 4, 2023. Gov't Mot. Mr. Diggs filed a motion in opposition on August 7, 2023, Def.'s Opp'n, and a motion to lift the stay, ECF No. 10. The Court held a hearing on the motion for emergency appeal and review on August 7, 2023. Minute Entry (August 7, 2023). During the hearing, the government and Mr. Diggs largely repeated their arguments from the initial detention hearing. Their oral arguments are fairly reflected in their briefs, although at the hearing the Defense proposed two additional conditions of confinement: (1)

6

releasing Mr. Diggs to the custody of a third-party; and (2) GPS monitoring to ensure Mr. Diggs does not visit gun stores or other places where guns are sold.

## II. LEGAL STANDARD

The Bail Reform Act allows the government to move for pretrial detention in one of two scenarios. First, the government may seek detention where the offense charged is one of a set of enumerated offenses, 18 U.S.C. § 3142(f)(1), including, as relevant here, "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm," *id.* § 3142(f)(1)(E). Second, the government may seek detention where the defendant poses a serious risk of flight, obstruction of justice, or witness intimidation. *Id.* § 3142(f)(2).

If pretrial detention is available, the statute requires a prompt hearing, upon the government's motion, before a judicial officer. *See id.* § 3142(f). At that hearing, the judicial officer must "determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." *Id.* The judicial officer must consider the following factors when making that determination:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

>  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in [the statute], the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

*Id.* § 3142(g). Moreover, a grand jury indictment must be taken "fair upon its face" and provides probable cause to believe the defendant actually committed the acts constituting the offense. *United States v. Mosuro,* 648 F. Supp. 316, 318 (D.D.C. 1986).

If, after the detention hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). If that finding concerns the safety of other persons or the community, it "shall be supported by clear and convincing evidence," *id.* § 3142(f), and the judicial officer must pinpoint "an identified and articulable threat to the community," *United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021). A flight-risk finding need only be supported by a preponderance of the evidence. *United States v. Vortis*, 785 F.3d 327, 328–29 (D.C. Cir. 1986).

Where the judicial officer who conducted the original hearing is a magistrate judge, however, both the government and the defendant have a chance to seek review of the magistrate judge's decision by a district judge. As relevant here, "[i]f a person is ordered released by a magistrate judge, . . . (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release. The motion shall be determined promptly." 18 U.S.C. § 3145(a); *see also id.* § 3145(b) (allowing defendant to seek review of detention order). The Court's "review of the magistrate judge's order of release is de novo." *United States v.*

*Fairlamb*, 535 F. Supp. 3d 30, 39 (D.D.C. 2021). When reviewing a magistrate judge's detention decision, "[t]he Court is free to use in its analysis any evidence or other reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009).

### III.  DISCUSSION AND FINDINGS

The Court now turns to its de novo review of the Release Order, considering first the four factors laid out in 18 U.S.C. § 3142(g), and then the proposed conditions of release. For the reasons that follow, the Court respectfully disagrees with Magistrate Judge Varholak's determination and finds that no set of conditions could reasonably assure the safety of the community if Mr. Diggs were released.

#### A.  Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense charged strongly favor detention. Engaging in the business of dealing in firearms without a license and the illegal transport of a firearm are felonies punishable by up to five years in prison. And while these crimes may not be crimes of violence or otherwise carry a presumption of dangerousness under 18 U.S.C. § 3142(e)(2)–(3), the particular circumstances of the gun sales alleged in this case indicate a flagrant indifference to the danger his actions posted to the community. As detailed above, the government's allegations in this case are that Mr. Diggs used social media to sell firearms to prohibited persons, including convicted felons. The government contends that Mr. Diggs *knew* he was selling firearms to convicted felons and has produced online messages that appear to show that Mr. Diggs sold to convicted felons because he could charge them higher prices. Several firearms purchased by Mr. Diggs have turned up in the possession of convicted felons across the D.C. metro area, and at least one such firearm was used in a shooting that resulted in injury to a victim. Moreover, the government has evidence that Mr. Diggs sold a firearm to a convicted felon in Colorado a mere

9

two months after meeting with ATF and learning he was the subject of an ongoing investigation. Assuming the government's allegations are true, Mr. Diggs' conduct seriously endangered the community by arming prohibited persons who then engaged in acts of violence. Mr. Diggs continued this conduct despite knowing he was subject to close government scrutiny. This amply demonstrates—and Magistrate Judge Varholak did not indicate any disagreement[1]—that the conduct charged in this case is a serious offense, the circumstances of which demonstrate great danger to the community.

### B. Weight of the Evidence

The weight of the evidence against Mr. Diggs also favors detention. The evidence, detailed above, is significant. And it is not, as the defense suggested at the detention hearing, insufficient to support a finding that Mr. Diggs intentionally sold firearms to convicted felons. Although Mr. Diggs denied engaging in firearms trafficking to ATF, the government has proffered online messages that show Mr. Diggs sold firearms to people Mr. Diggs apparently believed were legally forbidden from purchasing or possessing firearms. The government has identified at least one convicted felon that received a firearm directly from Mr. Diggs. And the government has proffered evidence that Mr. Diggs transported firearms to the D.C. metro area to sell them. Several firearms purchased by Mr. Diggs were recovered from convicted felons in the D.C. metro area. And despite Mr. Diggs' statement to ATF that some of his firearms were stolen out of his vehicle while he was in D.C. and that he reported the theft to local police, there is no evidence that Mr. Diggs ever reported the theft. Indeed, ATF did not find a police report, and the defense was unable to explain

---

[1] Magistrate Judge Varholak agreed that Mr. Diggs' conduct after the December 2022 ATF visit strengthens the government's dangerousness argument.

why no such report was filed. In sum, the Court finds that the government has proffered significant evidence that Mr. Diggs committed the charged offenses.

### C. History and Characteristics of the Defendant

The history and characteristics of the defendant weigh slightly in favor of detention. On the one hand, Mr. Diggs has some college education, military experience, significant ties to Colorado and D.C., gainful employment, and no prior convictions. On the other hand, Mr. Diggs allegedly operated an unlawful firearms business for approximately one year and nine months and repeatedly sold firearms to convicted felons. Mr. Diggs allegedly continued to sell firearms to convicted felons even after ATF told him they were investigating him for gun trafficking. And Mr. Diggs may have lied to ATF when he told them several of his guns were stolen and that he reported the theft to police. Mr. Diggs allegedly exploited his ability to legally purchase and possess firearms so he could sell them to convicted felons at marked-up prices. Hence, although his record is free from any criminal history, his conduct starting in June 2021 suggests a prolonged, continuing willingness to engage in unlawful activity.

Moreover, the government has proffered evidence that Mr. Diggs solicited and arranged firearms sales using his social media accounts. The government has also proffered evidence that Mr. Diggs knowingly purchased firearms in his own name with the intent to sell them to others. That evidence, combined with his conduct after meeting with ATF, suggests a willingness to engage in criminal activity even when it is likely to be discovered. In this case, the alleged activity was discovered after ATF reviewed online messages and the Metropolitan Police Department recovered firearms purchased by Mr. Diggs.

Although the Court is cognizant that Mr. Diggs' recent alleged criminal activities represent a departure from his previously clean record, it finds the nature of those allegations, their extended

duration, and their apparent continuation after ATF told Mr. Diggs he was under investigation, concerning. The court therefore finds that the history and characteristics of Mr. Diggs weigh slightly in favor of detention.

### D. Danger to the Community

The nature and seriousness of the danger that Mr. Diggs would pose to the community strongly weigh in favor of detention. As already explained, Mr. Diggs allegedly sold firearms to prohibited persons, including convicted felons. He allegedly transported firearms to D.C. for sale. He allegedly continued selling firearms even after learning he was the subject of an active federal investigation. Firearms purchased by Mr. Diggs were recovered from convicted felons in the D.C. metro area and connect to at least one violent shooting. And there is evidence that at least one convicted felon received a firearm directly from Mr. Diggs. Mr. Diggs' conduct indicates he is willing to sell firearms to individuals who are lawfully prohibited from possessing them because they pose a danger to the safety of others in the community. In sum, the risk of releasing Mr. Diggs is that there is a significant probability he will continue that course of conduct and engage in further firearm sales to convicted felons, even if doing so would likely attract the attention of authorities. The Court therefore finds that the nature and seriousness of the danger that his release would pose to the community strongly favors detention.

### E. Potential Release Conditions

Finally, the Court considers the potential conditions of release, keeping in mind the conditions imposed by Magistrate Judge Varholak at the detention hearing.[2] The conditions of release would prohibit Mr. Diggs from possessing, purchasing, or transferring any firearms. They

---

[2] The proposed conditions of release were discussed during the detention hearing, the audio recording of which this Court has reviewed.

would prohibit him from attending any firearms shows or visiting any stores or businesses that sell firearms. They would restrict him from traveling outside of Colorado or D.C. And they would require him to submit to supervision. They also subject Mr. Diggs to a $10,000 unsecured bond that will be forfeited if Mr. Diggs violates the conditions of his release.

The Court finds that neither these nor any other set of conditions would reasonably assure the safety of the community if Mr. Diggs were released. The Court cannot take Mr. Diggs at his word that he would comply with the conditions of his release. As explained above, there is significant evidence that the offense charged in this case, which is serious, consisted of an extended course of conduct that continued even after Mr. Diggs was informed by ATF that he was under investigation. The Court doubts that prohibiting Mr. Diggs from possessing, using, or transferring firearms, or attending firearms shows or business that sell firearms, would halt Mr. Diggs from possessing firearms or selling them to convicted felons. The proposed conditions would help ensure the safety of the community only insofar as Mr. Diggs did not seek to evade them and succeed at doing so, and the government has presented clear and convincing evidence that he would seek to evade these conditions. Moreover, the Court does not believe that GPS monitoring can reasonably assure the safety of the community. Gun stores are not the only locations where Mr. Diggs can purchase firearms. At bottom, the Court does not believe that GPS monitoring can adequately restrict Mr. Diggs from the range of opportunities he will have to continue his alleged illicit business if he is released. And the Court has no reason to believe that turning Mr. Diggs over to the custody of a third-party will ensure his compliance with the Court's orders.

The "identified and articulable threat to the community," *Munchel*, 991 F.3d at 1282, in short, is that Mr. Diggs will resume selling firearms to prohibited persons, until he is caught again. The proposed conditions of release do not assuage that concern, and those conditions could not be

made stringent enough to sufficiently mitigate the identified and articulable threat, because they depend on Mr. Diggs willfully complying with his conditions of release notwithstanding his alleged willingness to engage in unlawful firearms dealing even after learning he is the subject of an investigation by federal law enforcement. The Court therefore concludes that the government has met its burden of showing by clear and convincing evidence that no set of conditions would reasonably assure the safety of the community if Mr. Diggs were released.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully disagrees with Magistrate Judge Varholak's decision to release Mr. Diggs pending trial. The Court "finds that no condition or combination of conditions will reasonably assure . . . the safety of . . . the community" if Mr. Diggs is released. 18 U.S.C. § 3142(e)(1).

The Court cannot be oblivious to the article on the front page of yesterday's Washington Post detailing the surge of shootings in D.C. that led to thirteen dead in the first five days of August. Peter Hermann & Jasmine Hilton, *D.C. toll: 13 slain in first 5 days of August*, Wash. Post, Aug. 7, 2023, at A1. And the follow-up article reporting that three of the people who initially survived died, bringing the total death count to sixteen. Peter Hermann & Jasmine Hilton, *Three more pronounced dead from weekend gun violence in D.C.*, Wash. Post (Aug. 7, 2023), https://perma.cc/7DVM-6SYB. And yesterday's front-page report from the Washington Times detailing that carjackings, often committed at gunpoint, have surged since the beginning of the summer. Matt Delaney, *Carjacking in D.C. just a 'game' to juveniles without fear of judicial consequence*, Wash. Times, Aug. 7, 2023, at A1. The Court is aware that courts and police have been roundly criticized for failing to act on violent crime. Here, the government has provided clear and convincing that "no condition or combination of conditions will reasonably assure . . . the safety of . . . the community" if Mr. Diggs is released. 18 U.S.C. § 3142(e)(1). This showing

14

permits this Court to take action by holding Mr. Diggs, who allegedly engaged in the business of selling firearms to prohibited persons, pending trial.

Accordingly, it is hereby **ORDERED** that the motion for review and appeal is **GRANTED**, the Release Order is **REVOKED**, defendant shall be **DETAINED** without bond pending trial, and the motion to lift the stay is **DENIED AS MOOT**. An Order of Detention accompanies this Memorandum Opinion and Order.

Date: 8/8/23

Royce C. Lamberth
United States District Judge